**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ELLIOTT C. MEDLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 12-669-GPM** |
| | ) | |
| **L. ORMANDY, P. KELLY, J. JARRETT,** | ) | |
| **D. SZOKE, and L. DUNCAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

Before the Court are Defendants Duncan, Jarrett, Kelly, Ormandy, and Szoke's motion for summary judgment (Doc. 28), Defendant Kelly's separate motion for summary judgment (Doc. 32), and Plaintiff's cross-motion for summary judgment (Doc. 36).  For the reasons set forth below, Defendants' motion is **GRANTED** and Plaintiff's motion **DENIED**. Judgment will enter for Defendants.

<u>Factual Background</u>

Plaintiff, Elliott C. Medlin, suffered a knee injury and was prescribed a metallic left knee brace in 1997.  He was subsequently incarcerated on drugs and weapons charges in 2010 and, after an initial intake medical examination at the United States Penitentiary Marion, he was allowed to wear the brace while incarcerated.   While at USP Marion, Plaintiff was assigned to the Facilities Department which contained various metal tools used to complete work assignments.

Inmates must pass through a metal detector in order to work.   Two months after Plaintiff started, tools went missing and the supervisor suspected Plaintiff because his metal brace would defeat the metal detector.   In March, 2011, the supervisor asked health services to evaluate the necessity of the brace.   After the evaluation it was determined that the brace was not necessary and it was replaced with a walking cane.   At the end of the month, Plaintiff fell down some stairs -- he attributes the fall to his knee buckling.   As of the date of the lawsuit, the brace has not been returned to Plaintiff.

Plaintiff asserts that confiscation of the knee brace, a necessary medical device, is deliberate indifference to his serious medical need.   Defendants claim that they are entitled to qualified immunity and that Plaintiff's claims fail on the merits.

In February, 2007, Plaintiff's doctor, Christian F. Vissers, prescribed a "functional ACL brace" for Plaintiff to wear "at all times while working" in order to eliminate instability in his left knee that followed anterior cruciate ligament reconstruction in 1998 (Doc. 35-1, p. 2).   The orders were modified in March, 2007 such that Plantiff was instructed to wear the brace "whenever he is active outside of work" (*Id.* p. 3).   Subsequent follow-up visits in June, 2007 and April, 2008 reveal that Plaintiff had no instability problems while wearing the brace and that his work was not restricted (*Id*. pp. 4-5, 12-14).   There are no medical records from 2009 to the time of Plaintiff's incarceration.

Defendants in this matter are all employees of the Bureau of Prison and worked at the USP Marion during the relevant time period.   It is undisputed that use of Plaintiff's knee brace was originally approved by Defendants Dr. David Szoke and Captain Luke Ormandy at intake.   In a February 25, 2011 "clinical encounter" report, Dr. Szoke noted that Plaintiff "[w]ears brace on left

knee for enhanced stability" and that Plaintiff reports a "4/10 knee and foot pain" (Doc. 32-2, p. 1). A physical examination revealed a "guarded gait/favoring gait" and normal active and passive range of motion in the knee (*Id.* p. 8).   The exam noted no instability.   Plaintiff's left knee grated or popped (mildly) upon examination, there was no swelling in the knee or masses at the rear of his knee joint, he tested positive for a possible ACL tear (which would be consistent with Plaintiff's prior surgery), and he tested negative on other tests on deformities of the ligaments and the meniscus.   Plaintiff was assessed as having "Knee, pain in joint, lower leg" and he was prescribed pain medication (*Id.* pp. 10-11).[1]   At no point in the report is there any indication that Dr. Szoke believed that the brace was a medically necessary device.

Captain Ormandy, during the relevant time period, was the department head for the Correctional Service Department, responsible for security within USP Marion (Luke Ormandy Declaration, Doc. 32-12, ¶ 2).   When Captain Ormandy learned, on March 11, 2011, that tools were missing from the Facilities Department where Plaintiff was working in the Paint Shop, he suspected Plaintiff because he "could use his metallic knee brace to defeat the metal detection device and remove metal contraband from the Facilities Department" (*Id.* ¶ 6).   Captain Ormandy removed Plaintiff from his position and "asked the Health Services Department to evaluate plaintiff's need for a metallic knee brace" (*Id.* ¶ 7).

Leslee Duncan, a Physician Assistant, indicates on March 11, 2011 that she removed Plaintiff's brace "per Captain request for institution security," and that she would "further evaluate knee for treatment" (Doc. 32-7, p. 1).[2]   In a subsequent "Clinical Encounter-Administrative Note," dated March 31, 2011, Ms. Duncan stated that "[r]ecent x-ray reveals no hardware

---

[1] Plaintiff also suffers from COPD, back pain, diabetes, and hypertension (Doc. 32-3, p. 10).
[2] Plaintiff was also seen by medical staff on March 21, 2012 for diabetes (Doc. 32-9, p. 1).   In the related note, Plaintiff was observed as "[a]mbulates with cane" (*Id.*).   There is no indication in this note that the brace was determined to be medically necessary.

problems… [patient] states that it give out and causes constant pain in joint. …Feels stable on exam" (*Id.*).   The recent x-ray to which Ms. Duncan referred was dated December 22, 2010 (Doc. 32-5, p. 1).   Thus, the knee appeared stable upon examination and the x-ray revealed mild degenerative joint disease.

On March 30, 2011, Plaintiff was seen by Nurse Karen Waggoner (who is not a Defendant in this lawsuit) after he had fallen down 4-5 steps.   Nurse Waggoner's note indicates that while Plaintiff was assisted onto a stretcher, he "moves all extremities without problems" that there were "[n]o deformities to knees," and she "[n]oted left knee without swelling or deformity" (Doc. 32-8, p. 1, 2).   Plaintiff was given pain medication, but there is no indication that the brace was re-issued.   Plaintiff was also examined by Dr. Szoke on June 25, 2012 where knee pain was noted (Doc. 32-10).

On April 15, 2011, the Utilization Review Committee informed Plaintiff that while a recommendation had been made for an outside orthopedic consult, the consultation would be deferred pending a re-evaluation from a Clinical Director or Staff Physician (Doc. 35-1, p. 1).   On February 8, 2012, Plaintiff was informed that an orthopedic consult was not medically necessary and would not take place (*Id.* p. 6).   Nonetheless, an April 5, 2011 "Medical Duty Status," signed by Ms. Duncan, indicates that Plaintiff was restricted to a lower bunk, restricted from all sports, and was restricted to no prolonged standing (*Id.* p. 10).   This document does not state that the restrictions are tied to any particular medical condition.

The two remaining Defendants, Jason Jarrett and Pat Kelly, a counselor and Unit Manager, respectively, were involved in the grievance procedure.   In response to Plaintiff's grievance, dated March 22, 2011, Counselor Jarrett stated that Plaintiff's brace was removed and that he

would be re-evaluated where "further treatment options will be explored" (Doc. 32-11, p. 8). Unit Manager Kelly reviewed this response on March 28, 2011.   Other than Counselor Jarrett's response and Unit Manager Kelly's signature, there is no indication in the record in what manner they allegedly deprived Plaintiff of his constitutional rights.

<u>Discussion</u>

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).   The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).   *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).   A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*   The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted).

The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the

Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference.   *Greeno*, 414 F.3d at 653.   "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."   *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).   A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs."   *Hayes* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).   "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'"   *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

       This case is an example of a prisoner dissatisfied with the decision of prison medical staff, not an example of a constitutional violation.   There is no showing that Defendants Duncan and Szoke acted beyond medical judgment, and their judgment is accorded deference unless "no minimally competent professional would have so responded under those circumstances."   *Sain v. Wood*, 512 F.3d 886, 894-5 (7th Cir. 2008).   Plaintiff presented evidence that in 2007 and 2008 a brace was prescribed for him to wear while working.   There is no showing that a medical professional has indicated the brace must be worn at all times after 2008.   Instead, the record reveals that Plaintiff has generally normal function of his knee and that he is able to walk, albeit with a guarded gait.   Plaintiff has had a number of physical examinations, none of which

indicate that a brace is necessary.

Plaintiff argues that the treatment Defendants prescribed—provision of a cane, was "blatantly inappropriate." *See Greeno v. Daley*, 414 F.3d 645, 653-4 (7th Cir. 2005).  Per Plaintiff, that inappropriateness is evidenced by the fact that his knee buckled while walking down some stairs causing him to fall and injure himself.  After this fall, however, Plaintiff was examined by Nurse Waggoner who noted no deformity of the knee.  A subsequent examination by Dr. Szoke on June 25, 2012 indicated that while Plaintiff complained of pain in his knee, the "exam is positive only for DJD changes" and that his exam was otherwise normal (Doc. 32-10, p. 4).  Thus, while Plaintiff attributes his fall to the lack of a brace, examinations after the fall show that Plaintiff was not being ignored, and that his condition was being evaluated and monitored. There is no evidence that the treatment plan, pain medication and the cane were blatantly inappropriate.  At most, Plaintiff has established that he disagrees with Defendants' medical opinions.  Such a disagreement does not rise to the level of a constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.").

As to Defendants Jason Jarrett and Pat Kelly, there is no showing that they were personally involved in Plaintiff's medical care, that they were aware of the seriousness of Plaintiff's condition or that they otherwise were deliberately indifferent to Plaintiff's serious medical needs. Non-medical personnel are generally "entitled to defer to the judgment of jail health professionals so long as" they do not ignore the inmate.  *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Counselor Jarrett noted that Plaintiff's medical condition would be evaluated by medical professionals and Defendant Kelly merely signed the grievance.  There is no showing that either

of these Defendants ignored Plaintiff.

With respect to Captain Ormandy, Plaintiff contends that he "told Medical Services to remove plaintiff's knee brace because he was self-convinced plaintiff took the tool and was getting away with it" (Doc. 35, p. 4).   There is some support in the record that the brace was removed on Captain Ormandy's request.   Ms. Duncan indicates in her March 11, 2011 note:   "…remove left rigid knee brace per Captain request for institution security" (Doc. 28-7, p. 1).   Captain Ormandy stated that he merely asked health services to evaluate the need for the brace (Ormandy Dec. ¶ 6). And a March 31, 2011 note penned by Ms. Duncan in fact requested an orthopedic consult (or MRI) to determine the necessity of the brace (Doc. 32-6, p. 1).   As noted above, Dr. Szoke's examination on June 25, 2012 revealed only "mild" degenerative changes in the knee per the May, 2012 x-ray (Doc. 32-10, p. 1).   Whether Captain Ormandy prompted removal of the brace is not dispositive, it is clear medical personal used their judgment to determine whether the brace was medically necessary.

In light of the foregoing conclusion that there was no constitutional violation, all Defendants are entitled to qualified immunity.    In determining whether Defendants are entitled to qualified immunity, the Court must consider two questions: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, was "the right clearly established?"   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier*, 533 U.S. 194, 201 (2001); *See also Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).   Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."   *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quotation marks and citations omitted).   And, "if officers of reasonable competence could

disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).   Neither Defendant Szoke nor Duncan exhibited such a lapse in medical judgment that their actions violate the Eighth Amendment's deliberate indifference standard.   Indeed, the record reveals that Plaintiff received multiple heath care visits and evaluations since his incarceration. Neither is there any indication that Defendants Jarrett or Kelly participated in Plaintiff's medical treatment.   Finally, there is no showing that Captain Ormandy was the final decision-maker on whether Plaintiff would be allowed to use his brace – that decision was made by medical staff after examinations and tests were performed.   Therefore, there is no showing that Plaintiff's constitutional rights were violated such that these Defendants should be tasked with defending this lawsuit.

<u>Conclusion</u>

Defendants' motion for summary judgment (Doc. 28) is **GRANTED.**   Defendant Kelly's additional motion for summary judgment will be termed as moot.   Plaintiff's motion for summary motion is **DENIED**.   Judgment will enter for Defendants and this case shall be closed.

**IT IS SO ORDERED.**

**DATED**: September 17, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge